UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LLEWELLYN SINCLAIR GEORGE,

                   Plaintiff,

              -v-

COUNTY OF WESTCHESTER, *et al.*,

                   Defendants.

No. 20-CV-1723 (KMK)

OPINION & ORDER

Appearances:

Llewellyn Sinclair George
White Plains, NY
*Pro se Plaintiff*

Jordan Silver, Esq.
Westchester County Attorney
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Plaintiff Llewellyn Sinclair George ("Plaintiff"), proceeding pro se, brings this Action pursuant to 42 U.S.C. § 1983 against the County of Westchester (the "County"), Assistant Warden La Fonda Spaulding ("Spaulding"), Assistant Warden Eric Middleton ("Middleton"), Sergeant Daniel Lopez ("Lopez"), Sergeant Matthew Kitt ("Kitt"), Captain Andre Mabra ("Mabra"), Captain Christopher Roberts ("Roberts"), and Captain Natasha Vanlierop ("Vanlierop"; collectively, "Defendants"), alleging that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.  (Compl. 2–6 (Dkt. No. 2); Ord. of Serv. 1 (Dkt. No. 9); Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 1 (Dkt. No. 30).)[1]  Before the Court is Defendants' Motion To Dismiss pursuant to Rule 12(b)(6) of the

---

[1] Because Plaintiff's Complaint includes several handwritten pages interspersed within a standard complaint form, the Court will refer to the ECF page stamp at the top of each page.

Federal Rules of Civil Procedure (the "Motion").  (*See* Defs.' Not. of Mot. (Dkt. No. 28).)  For

the reasons that follow, Defendants' Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The alleged facts, which are accepted as true for purposes of resolving this Motion, are as

follows.  On April 4, 2019, while incarcerated at the Westchester County Jail, Plaintiff

approached the desk of Vanlierop, who was conducting a tour of the "2 southwest housing unit"

in her capacity as a "sector supervisor."  (Compl. 6.)[2]  Plaintiff tried to hand Vanlierop a

grievance (the "First Grievance"), but Vanlierop "glanced" at the grievance, "turned away," and

stated, "you know I don't do grievances."  (*Id.*)  Later that day, Lopez was touring the upper tier

of the same housing unit when Plaintiff attempted to hand him the same grievance.  (*Id.* at 6.)

Lopez read the grievance, handed it back to Plaintiff, and said, "I'm not getting into the middle

of this mess."  (*Id.* at 7.)

Five days later, on the morning of April 9, 2019, Plaintiff's cell was being searched by

two male officers when Vanlierop entered the cell and "confiscated" a separate grievance

Plaintiff had prepared (the "Second Grievance") regarding Vanlierop's refusal to accept the First

Grievance.  (*See id.* at 7, 10.)  Shortly thereafter, Vanlierop issued a fabricated misbehavior

report against Plaintiff in retaliation for the Second Grievance.  (*See id.*)[3]

---

Note that Plaintiff's Complaint refers to Defendant Spaulding as "A. Spaulding" and omits first names for all but one Defendant.  (*See* Compl. 3–4.)  Defendants have provided additional identifying information in their Memorandum of Law.  (*See* Defs.' Mem. 1.)

[2] Although Vanlierop was not initially named as a Defendant, (*see* Compl. 3–4), the Court directed the Clerk of Court to add her as a Defendant on April 21, 2020, (Ord. of Serv. 1).

[3] Although at one point the Complaint does not draw a clear distinction between the First Grievance and the Second Grievance, (*see* Compl. 7), it also suggests that the grievance

2

Around 11:30 A.M. on the following day (April 10), Mabra and Kitt stopped by Plaintiff's cell door with the housing unit officer.  (*Id.* at 7.)  Mabra ordered the housing unit officer to open Plaintiff's door, which she did.  (*Id.*)  While Kitt and the housing unit officer stood outside Plaintiff's cell and "act[ed] as lookouts," Mabra entered Plaintiff's cell and "inquire[d] about" Plaintiff's grievance against Vanlierop.  (*Id.* at 7, 9.)  Before Plaintiff could respond, Mabra, using a "stiff open palm," "shoved" Plaintiff against his cell wall and "demanded that [P]laintiff retract the contents of [his] grievance."  (*Id.* at 9.)  Plaintiff told Mabra "to go to hell."  (*Id.*)  Mabra, while exiting Plaintiff's cell, said, "I'm going to make your accommodations here a little more lengthy, your ass won't be making it home."  (*Id.*)[4]

After Vanlierop had issued the fabricated misbehavior report against Plaintiff, Defendant Roberts conducted a disciplinary hearing.  (*Id.* at 10.)  At the hearing, Roberts denied Plaintiff's "repeated[] request[s]" to call witnesses and present audio and video evidence."  (*Id.*)  Before the hearing had begun, Roberts stated that he had received several comments from the "warden's office" indicating "that they were pissed off about [Plaintiff's] treatment of Defendant Vanlierop."  (*Id.*)  Plaintiff alleges that, contrary to Roberts' written disposition, he did not plead

---

confiscated by Vanlierop addressed Vanlierop's refusal to process Plaintiff's *initial* grievance, (*see id.* at 7, 10), which necessarily indicates that Plaintiff had written a *second* grievance after Vanlierop refused to process the first. Specifically, Plaintiff suggests that the misbehavior report issued by Vanlierop was made in retaliation for the grievance she had seized, (*see id.* at 7), and Plaintiff alleges that the misbehavior report was issued in retaliation for a grievance regarding "Defendant Vanlierop's refusal to accept and process [P]laintiff's grievance," (*id.* at 10). Construing the Complaint liberally, the Court therefore assumes there were two distinct grievances: (1) the First Grievance (the subject of which is unclear), and (2) the Second Grievance, which addressed Vanlierop's refusal to accept the First Grievance.  It is the Second Grievance which Vanlierop allegedly confiscated, and for which she allegedly issued a false misbehavior report in retaliation.  (*See id.* at 7, 10.)

[4] Quotations from Plaintiff's submissions occasionally reflect minor corrections to spelling and grammar.

guilty to any of the charges. (*Id.* at 11.) He further alleges that Roberts' handling of the hearing

was "improperly influenced by the warden's office." (*Id.*) At the conclusion of the hearing,

Roberts imposed a penalty of "several days of cell confinement and loss of good time." (*Id.* at

10.) Plaintiff subsequently appealed the hearing disposition to Spaulding and Middleton. (*Id.* at

11.) He alleges that the outcome of these appeals "[was] improper and unjust." (*Id.*)

　　　Plaintiff alleges that as a result of Defendants' actions, specifically their "constant threats

and taunting," he suffered "mental anguish and psychological issues," as well as a "loss of

sleep." (*Id.* at 8.) Plaintiff "was repeatedly seen" by the Office of Mental Health at the

Westchester County Jail and was prescribed medication—Plaintiff does not identify which

one(s)—"to cope with the trauma caused by the [D]efendants." (*Id.*) He seeks a "permanent

court order" requiring administrators at the Westchester County Department of Correction "to

record all future disciplinary hearings by audio/video." (*Id.*) He also seeks $100,000 in

compensatory damages and $60,000 in punitive damages. (*Id.*)

　　　B.  Procedural History

　　　Plaintiff filed his Complaint on February 26, 2020. (Dkt. Nos. 1–2.) On April 8, 2020,

the Court granted Plaintiff leave to proceed in forma pauperis. (Dkt. No. 6.) On April 21, 2020,

the Court dismissed Plaintiff's claims against the Westchester County Department of Correction

and directed the Clerk of Court to add Vanlierop and the County as Defendants. (Dkt. No. 9.)[5]

---

[5] The Court dismissed claims against the Westchester County Department of Correction because municipal agencies or departments do not have the capacity to be sued under New York law. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." (collecting cases)); *see also* N.Y. GEN. MUN. LAW § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village."). The Court nevertheless concluded that in light of Plaintiff's pro se status and his

On August 10, 2020, Defendants filed a pre-motion letter outlining the grounds for their proposed motion to dismiss. (Dkt. No. 21.) Having received no response from Plaintiff, the Court adopted a briefing schedule for the Motion on August 25, 2020. (Dkt. No. 22.) Defendants filed the instant Motion and supporting papers on October 9, 2020. (*See* Not. of Mot.; Decl. of Jordan L. Silver, Esq., in Supp. of Mot. (Dkt. No. 29); Defs.' Mem.) Plaintiff failed to oppose the Motion, (*see* Dkt. No. 32), and on November 24, 2020, the Court deemed the Motion fully submitted, (Dkt. No. 33).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

---

"clear intention to assert claims against the County of Westchester," it would construe the Complaint as asserting claims against the County. (Dkt. No. 9.) Likewise, given Plaintiff's intention to assert claims against Vanlierop, the Court directed that Vanlierop be added as a Defendant. (*Id.*)

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4

n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se

litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at

*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in

response to [a] defendant['s] request for a pre-motion conference," *Jones v. Fed. Bureau of*

*Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents

either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in

bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation

marks omitted), and "his opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997

WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his ] [complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of*

*Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with

relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601,

605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding

procedural rules and to comply with them." (citation and italics omitted)).

B.  Analysis

Although Plaintiff does not identify the precise nature of his claims under the First,

Eighth, and Fourteenth Amendments, the Court interprets the Complaint to raise eight distinct

claims.  Specifically, the Complaint claims (i) that Vanlierop and Lopez improperly refused to

accept Plaintiff's First Grievance (the "Grievance Claim"), (*see* Compl. 6–7); (ii) that Vanlierop

retaliated against Plaintiff in response to the Second Grievance by confiscating this grievance

7

and filing a false misbehavior report (the "Vanlierop Retaliation Claim"), (*see id.* at 7, 10); (iii) that Mabra also retaliated against Plaintiff in response to the Second Grievance by entering Plaintiff's cell, shoving him against a wall, and demanding that he retract the contents of the Second Grievance (the "Mabra Retaliation Claim" and, together with the Vanlierop Retaliation Claim, the "Retaliation Claims"), (*see id.* at 7, 9); (iv) that Mabra used excessive force when demanding that Plaintiff retract the contents of the Second Grievance (the "Excessive Force Claim"), (*see id.* at 9); (v) that Kitt failed to intervene when Mabra was assaulting Plaintiff (the "Failure to Intervene Claim"), (*see id.* at 7, 9); (vi) that Roberts, by denying Plaintiff the opportunity to call witnesses and present audio and video evidence at his disciplinary hearing, violated Plaintiff's procedural due process rights (the "Roberts Procedural Due Process Claim"), (*see id.* at 10–11); (vii) that Spaulding and Middleton, by affirming Roberts' decision, also violated Plaintiff's procedural due process rights (the "Spaulding/Middleton Procedural Due Process Claim" and, together with the "Roberts Procedural Due Process Claim," the "Procedural Due Process Claims"), (*see id.* at 11); and (viii) that the County should be liable for the foregoing violations (the "*Monell* Claim").  The Court will address these claims in order.

### 1.  The Grievance Claim

As discussed, Plaintiff alleges that Vanlierop and Lopez refused to accept the First Grievance.  (*Id.* at 6–7.)  To the extent Plaintiff asserts a discrete claim based on these allegations, the Court must dismiss the claim.

"It is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances."  *Crichlow v. Fischer*, No. 15-CV-6252, 2017 WL 920753, at *7 (W.D.N.Y. Mar. 7, 2017); *see also Corley v. City of New York*, No. 14-CV-3202, 2017 WL 4357662, at *7 (S.D.N.Y. Sept. 28, 2017) ("[The] [p]laintiff did not have a liberty interest to

access the [prison's] grievance program that would provide a basis for a constitutional due process claim here."); *Nji v. Heath*, No. 13-CV-200, 2013 WL 6250298, at *6 (S.D.N.Y. Dec. 2, 2013) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently[,] allegations that prison officials violated those procedures do[] not give rise to a cognizable § 1983 claim." (citation omitted)); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that prison grievance procedures do not create a due-process-protected liberty interest."), *aff'd*, 548 F. App'x 29 (2d Cir. 2013); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment."). "Rather, in the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is . . . directly petitioning the government for redress of his claims." *Harris v. Westchester Cnty. Dep't of Corr.*, No. 06-CV-2011, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) (collecting cases). Consequently, "courts regularly dismiss claims brought to remedy alleged violations of inmate grievance procedures." *Martinez v. Schriro*, No. 14-CV-3965, 2017 WL 87049, at *3 (S.D.N.Y. Jan. 9, 2017) (alteration omitted). Accordingly, any due process claim against Vanlierop and Lopez based on their purported interference with the grievance process is dismissed.

### 2.  The Retaliation Claims

"Prisoners have a constitutional right to petition the government, and it is a violation of § 1983 for prison officials to retaliate against prisoners for the exercise of that right." *Perkins v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at *13 (S.D.N.Y. Mar. 18, 2019) (citation omitted). To state a First Amendment claim of retaliation, an inmate must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the [inmate],

and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation and alteration omitted). An adverse action is any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (quotation marks omitted).  In determining whether a prison official's conduct constitutes adverse action, "the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens." *Id.* (quotation marks and alterations omitted).  "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed that district courts must "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (quotation marks omitted)).  Accordingly, First Amendment retaliation claims must be "supported by specific and detailed factual allegations" and may not be stated "in wholly conclusory terms."  *Dolan*, 794 F.3d at 295 (citation omitted).

As noted, Plaintiff alleges that Vanlierop and Mabra both retaliated against him in response to the Second Grievance—Vanlierop by confiscating the grievance and filing a false misbehavior report, (*see* Compl. 7, 10), and Mabra by entering Plaintiff's cell, shoving him against a wall, and demanding a retraction, (*id.* at 7, 9).  The Court will evaluate each claim separately under the three-part test set out in *Holland*.

a.  The Vanlierop Retaliation Claim

With respect to the first prong of the *Holland* test, the Complaint plausibly alleges that Vanlierop's actions against Plaintiff came in response to a form of protected conduct—namely, Plaintiff's preparation of the Second Grievance.  "It is well-established that inmates' filing of grievances is a constitutionally protected exercise of their right under the First Amendment to petition the government for the redress of grievances."  *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *4 (S.D.N.Y. July 16, 2013) (citing *Graham*, 89 F.3d at 80); *see also Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *10 (S.D.N.Y. Sept. 28, 2018) (same); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 367 & n.21 (S.D.N.Y. 2011) (same; collecting cases).  Thus, Plaintiff's allegations with respect to Vanlierop are sufficient to satisfy the first prong of the *Holland* test.

With respect to *Holland*'s second prong, Plaintiff alleges two distinct forms of possibly adverse action by Vanlierop—(1) her confiscation of the Second Grievance and (2) her filing of a false misbehavior report.  (*See* Compl. 7, 10.)  Although inmates have no constitutional right to be free from a cell search, including retaliatory searches, *see, e.g.*, *Joseph v. Annucci*, No. 18-CV-7197, 2020 WL 409744, at *5 (S.D.N.Y. Jan. 23, 2020) (stating that inmates have "no constitutional right to be free from cell searches of any kind, including retaliatory cell searches" (citation omitted)), they may nevertheless "assert a retaliation claim for retaliatory conduct in connection with a cell search," *Hill v. Laird*, No. 06-CV-126, 2014 WL 1315226, at *8 (E.D.N.Y. Mar. 31, 2014), including a prison official's seizure of legal documents or administrative grievances, *Smith v. City of New York*, No. 03-CV-7576, 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (holding on summary judgment that the defendants' "destruction of [the plaintiff's] legal papers" constituted "an adverse action substantial enough to satisfy the second prong of the

retaliation test").  At this early stage of the case, Plaintiff's allegation that Vanlierop seized the Second Grievance is sufficient to state an adverse action.  *See Yunus v. Jones*, No. 16-CV-1282, 2017 WL 9511176, at *9 (N.D.N.Y. Aug. 23, 2017) (concluding that "the allegation that [the] defendant . . . confiscated [the] plaintiff's personal property"—including prison grievances—"in retaliation for the exercise of his First Amendment grievance rights [was] sufficient to withstand a motion to dismiss"), *report and recommendation adopted*, 2017 WL 5956762 (N.D.N.Y. Dec. 1, 2017); *Guillory v. Haywood*, No. 13-CV-1564, 2015 WL 268933, at *21 (N.D.N.Y. Jan. 21, 2015) (order adopting report & recommendation) (holding that the plaintiff adequately stated a claim for retaliation where he alleged that his legal documents were confiscated shortly after complaints over his treatment at the prison facility); *Gomez v. Graham*, No. 14-CV-201, 2014 WL 5475348, at *5 (N.D.N.Y. Oct. 29, 2014) (concluding that "[a]t th[e] early juncture of" a motion to dismiss, allegations that the plaintiff's legal papers were confiscated were sufficient to state a retaliation claim).

Similarly, although "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (noting that "[t]he Second Circuit has long held . . . that a prison inmate has no constitutional right to be free from being falsely accused in a misbehavior report"), there is an exception where the inmate can "show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (quotation marks omitted); *see also Cook v. Quattrocchi*, No. 19-CV-11659, 2020 WL 564082, at *2 (S.D.N.Y. Feb. 5, 2020) (same).  Here, Vanlierop allegedly issued the false misbehavior report in retaliation for Plaintiff's participation

in constitutionally protected conduct—namely, his preparation of the Second Grievance—and thus, the Complaint sufficiently alleges an adverse action based on Vanlierop's issuance of the misbehavior report.  *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (concluding that the plaintiff sufficiently alleged an adverse action based on the defendants' filing of false misbehavior reports in response to the plaintiff's prior grievance submissions); *Arriaga v. Gage*, No. 16-CV-1628, 2019 WL 2053990, at *6 (S.D.N.Y. May 9, 2019) (concluding on a motion to dismiss that allegedly false misbehavior reports issued in retaliation for the plaintiff's grievances "qualif[ied] as adverse actions"); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (concluding that the defendants' alleged retaliation—"[f]iling a false misbehavior report about [the plaintiff]" in response to the plaintiff's submission of a grievance—"would deter a similarly situated person of ordinary firmness from exercising his First Amendment rights," and therefore "qualifie[d] as an adverse action").

Finally, in considering whether "there was a causal connection between the protected conduct and the adverse action" under *Holland*'s third prong, *see* 758 F.3d at 225, "a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff," *Thomas v. DeCastro*, No. 14-CV-6409, 2019 WL 1428365, at *9 (S.D.N.Y. Mar. 29, 2019) (citation omitted).  Here, Plaintiff alleges that Vanlierop seized the Second Grievance and issued the false misbehavior report on or around April 9, (*see* Compl. 7, 10)—only five days after the incident that was the subject of the Second Grievance,

(*see id.* at 6, 10).[6]  The Second Circuit has "held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation." *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 413 (D. Conn. 2016) (quoting *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013)), *aff'd*, 720 F. App'x 79 (2d Cir. 2018); *see also Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017) (summary order) (same); *Mateo*, 2013 WL 3863865, at *6 (finding a "plausible inference" that the defendants issued a misbehavior report in retaliation for the plaintiff's past grievances based in part on the fact that the report was issued just one day after the plaintiff had a confrontation with the defendants).  "Although temporal proximity between constitutionally protected activity and potentially retaliatory activity generally will not, on its own, allow a plaintiff to withstand a motion to dismiss," *Salahuddin v. Mead*, No. 95-CV-8581, 2002 WL 1968329, at *6 n.6 (S.D.N.Y. Aug. 26, 2002), courts may "exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases," *Quezada v. Roy*, No. 14-CV-4056, 2017 WL 6887793, at *10 (S.D.N.Y. Dec. 14, 2017) (quotation marks omitted).  Though Plaintiff appears to rely solely on the temporal proximity between his protected conduct and Vanlierop's alleged retaliation, some courts in this District have found that, at the pleadings stage of a case, such close temporal proximity is sufficient to establish a causal connection, particularly where, as here, the defendant appears to retaliate in response to grievance of which he (or she) was the subject.  *See Vogelfang v. Capra*, 889 F. Supp. 2d 489, 518 (S.D.N.Y. 2012) (concluding, for purposes of a motion to dismiss, that where the defendant filed a false misbehavior report against the plaintiff three days after the plaintiff had filed a grievance against that defendant, "[t]he temporal proximity of

---

[6] Plaintiff does not specify precisely when he drafted the Second Grievance, but it necessarily was sometime between April 4 and April 9.  *See generally* n.3 *supra*.

th[o]se two events, as well as the common identity between the subject of [the plaintiff's] grievance and the author of the [misbehavior report], plausibly suggest[ed]" a causal connection); *Mateo*, 682 F. Supp. 2d at 435 (concluding that, on a motion to dismiss, the plaintiff's allegation that the defendant filed a false misbehavior report one day after the plaintiff filed a sexual harassment grievance against the defendant was sufficient to plead the causation element of his retaliation claim).[7]  Consistent with these cases, the Court concludes that Plaintiff has adequately alleged the causation element of his retaliation claim.

Accordingly, the Vanlierop Retaliation Claim survives the instant Motion.

### b.  The Mabra Retaliation Claim

Mabra allegedly retaliated against Plaintiff in response to the Second Grievance by entering his cell, shoving him against a wall, demanding that Plaintiff retract the contents of the Second Grievance, and then threatening Plaintiff that he would "make [Plaintiff's] accommodations . . . a little more lengthy," such that Plaintiff "[wouldn't] be making it home." (Compl. 7, 9.)  "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant," *Kotler v. Boley*, No. 17-CV-239, 2018 WL 4682026, at *4 n.2 (S.D.N.Y. Sept. 28, 2018) (collecting cases)—in this case, Mabra's retaliation for complaints against Vanlierop.  But courts have recognized an exception where, for example, the defendant made clear that he or she was retaliating on behalf of a colleague.  *See, e.g.*, *Headley v. Fisher*, No. 06-CV-6331, 2008 WL 1990771, at *18 (S.D.N.Y. May 7, 2008) (finding that the plaintiff adequately alleged a retaliation claim where the defendant hit him and stated, "this is for CO.

---

[7] Note, however, that Plaintiff may not rely on temporal proximity alone to survive a summary judgment motion.  *See, e.g.*, *Bryant v. Goord*, No. 99-CV-9442, 2002 WL 553556, at *2 (S.D.N.Y. Apr. 12, 2002) ("Although the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment.").

Simpson," the defendant against whom the plaintiff had filed a grievance).  That is the case here, where Mabra allegedly made clear that he was acting in response to the grievance concerning Vanlierop.  (*See* Compl. 9 (alleging that Mabra entered Plaintiff's cell and "inquire[d] about the grievance that [P]laintiff had written against Defendant Vanlierop" before shoving Plaintiff and demanding that he "retract the contents of the grievance" against Vanlierop).)  For reasons discussed with respect to Vanlierop in Part II.B.2.a, *supra*, the Court concludes that Plaintiff has adequately alleged *Holland*'s first and third elements with respect to Mabra.  That is, the Complaint plausibly suggests that Mabra's allegedly retaliatory actions were in response to Plaintiff's exercise of constitutionally protected conduct (his preparation of the Second Grievance), and Mabra's actions occurred on April 10, just one day after Vanlierop seized the Second Grievance, (*see* Compl. 7), which itself had only been drafted within the past several days, *see* notes 3 & 6 *supra*, thereby establishing the necessary causal connection.

The only question remaining is whether Mabra's conduct constitutes adverse action so as to satisfy *Holland*'s second prong.  Here, there are three discrete actions to consider: (1) Mabra's threat to Plaintiff ("[Y]our ass won't be making it home"); (2) Mabra's demand that Plaintiff "retract the contents of" the Second Grievance; and (3) Mabra's act of shoving Plaintiff against the wall.  (*See* Compl. 9.)

With respect to the first action, "verbal threats may qualify as adverse actions" in the prison retaliation context *only* where they are "sufficiently specific and direct."  *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *17 (S.D.N.Y. Dec. 21, 2018) (quotation marks omitted) (collecting cases); *see also Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *11 (S.D.N.Y. Sept. 28, 2018) (same); *Mateo*, 682 F. Supp. 2d at 434 (explaining that "[t]he less direct and specific a threat, the less likely it will deter an inmate from exercising

his First Amendment rights").  "Thus, vague intimations of some unspecified harm generally will

not rise to the level of adverse action for the purpose of a First Amendment retaliation claim."

*Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007).  Here, Mabra's alleged threat is

more benign than many threats which courts in the Second Circuit have found insufficient to

constitute an adverse action.  *See Terry*, 2018 WL 4682784, at *11 (dismissing a First

Amendment retaliation claim because the alleged threat was insufficiently specific and direct

even where corrections officers stated that "they were gonna kill" the plaintiff (record citation

and alteration omitted)); *see also Albritton v. Morris*, No. 13-CV-3708, 2016 WL 1267799, at

*18 (S.D.N.Y. Mar. 30, 2016) (dismissing First Amendment retaliation claims because a

corrections officer's statements to a plaintiff that his "grievances were unlikely to succeed" and

that the officer "would handle things 'his way'" were insufficiently specific or direct);

*Barrington v. New York*, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011) (granting summary judgment

in favor of a defendant who told an inmate that "'me and my boys . . . going to get you' while

brandishing a copy of a grievance"); *Bilal v. N.Y. State Dep't of Corr.*, No. 09-CV-8433, 2010 WL

2506988, at *16 (S.D.N.Y. June 21, 2010) ("Neither [the defendant's] comment . . . that [the

plaintiff] was 'lucky' because correction officers 'usually fuck people up for writing a bunch of

bullshit grievances' nor his . . . comment that '[y]ou're not the only one who can write.  I'm

willing to bet you'll break or get broke up,' was a 'direct' or 'specific' threat." (alteration and

record citations omitted)), *aff'd sub nom.*, *Bilal v. White*, 494 F. App'x 143 (2d Cir. 2012); *cf.*

*White*, 2018 WL 6726555, at *14 ("This allegation constitutes a specific, clear threat made in

response to [the] [p]laintiff's prospective grievance against [the] [d]efendant . . . .  [The

defendant] threatened physical harm to [the] [p]laintiff, and did so with particularity, by pointing

to the inmates who would harm [the] [p]laintiff and explaining why they would harm him at her

17

direction.").  In sum, Plaintiff has failed to allege an adverse action based on Mabra's alleged threat.

With respect to Mabra's second action, case law suggests that where a defendant demands that an inmate withdraw a prison grievance, such a demand does not give rise to a retaliation claim unless the demand is accompanied by a sufficiently specific and direct threat. Here, because Mabra's threat was not sufficiently specific or direct, his alleged demand that Plaintiff "retract the contents" of the Second Grievance does not constitute an adverse action. *See Rodriguez v. Patchen*, No. 13-CV-1086, 2018 WL 2122877, at *9 (W.D.N.Y. Mar. 1, 2018) (concluding on summary judgment that the defendant's alleged "threat[] to use physical violence against [the] [p]laintiff unless [he] withdrew his inmate grievance" did not establish a retaliation claim because "physical violence" constituted a vague threat), *report and recommendation adopted*, 2018 WL 2119768 (W.D.N.Y. May 8, 2018); *Bartley v. Collins*, No. 95-CV-10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (concluding on summary judgment that "verbal threats such as 'we [are] going to get you, you better drop the [law]suit,' do not rise to the level of adverse action" (footnote omitted)); *cf. St. Pierre v. Semple*, No. 14-CV-1866, 2015 WL 6872442, at *4 (D. Conn. Nov. 9, 2015) (finding that the plaintiff adequately stated a retaliation claim against a nurse who threatened to continue to stop providing him with his prescribed pain medication unless he withdrew a grievance against her).  Thus, Plaintiff cannot state a retaliation claim against Mabra based on Mabra's demand that he retract the Second Grievance.

With respect to Mabra's third action, physical assault may, depending on its severity, constitute an adverse action for purposes of a First Amendment retaliation claim.  *See Flemming v. King*, No. 14-CV-316, 2016 WL 5219995, at *5 (N.D.N.Y. June 20, 2016), *report and recommendation adopted*, 2016 WL 5173282 (N.D.N.Y. Sept. 21, 2016); *see also Baskerville v.*

*Blot*, 224 F. Supp. 2d 723, 731–32 (S.D.N.Y. 2002) (holding that a "retaliatory assault"

sufficiently described an adverse action for purposes of a retaliation claim).  Notably, "the

alleged assault need not rise to the level of an Eighth Amendment excessive force violation in

order to be considered an adverse action for purposes of First Amendment retaliation analysis."

*Flemming*, 2016 WL 5219995, at *5.  Even in light of this lower standard, however, Mabra's

alleged action is still insufficient to constitute an adverse action.  The cases in which courts have

recognized assault as a form of adverse action have involved markedly more violent conduct

than that alleged here.  *See, e.g.*, *Salgado v. NYS Dep't of Corr. & Cmty. Supervision*, No. 13-CV-

1108, 2016 WL 6311296, at *3, *8 (W.D.N.Y. Sept. 15, 2016) (concluding that slamming the

plaintiff's finger in a cell window and beating him constituted adverse action for purposes of

retaliation claim); *Baskerville*, 224 F. Supp. 2d at 726, 732 (holding that a "retaliatory assault" in

which the plaintiff was placed in a chokehold, shoved into the bars of his cell, and choked until

he "was on the verge of collapsing" "sufficiently describe[d] adverse conduct that would deter a

reasonable inmate from exercising his constitutional rights").  By contrast, courts have found that

shoving an inmate or comparable conduct is insufficient to constitute an adverse action.  *See*

*Flynn v. Ward*, No. 15-CV-1028, 2018 WL 3195095, at *9 (N.D.N.Y. June 7, 2018) (observing

that "[a]lthough an alleged assault need not rise to the level of an Eighth Amendment excessive

force violation in order to be considered an adverse action for purposes of First Amendment

retaliation analysis, [the plaintiff's] allegations that [a defendant] 'push[ed] him around'" was

"de minimis" and therefore insufficient to constitute adverse action (record citation omitted) (last

alteration in original)), *report and recommendation adopted*, 2018 WL 3193201 (N.D.N.Y. June

28, 2018); *Rivera v. Goord*, 119 F. Supp. 2d 327, 340 (S.D.N.Y. 2000) (concluding that particular

defendants' "alleged acts of retaliation"—"'shov[ing]' [the plaintiff] while taking him to the

[Special Housing Unit ("SHU")]"—"even if assumed to be true, [were] de minimis . . . [and] would not chill a person of ordinary firmness from continuing to engage in First Amendment activity" (italics omitted)); *see also, e.g.*, *Myers v. Saxton*, No. 20-CV-465, 2021 WL 149062, at *7 (N.D.N.Y. Jan. 15, 2021) ("[I]n this circuit, courts have routinely concluded that the type of physical assault suffered by [the] plaintiff in this case (i.e., having a food tray thrown at him) is de minimis for purposes of a retaliation claim and is not sufficient to satisfy the adverse action element."); *Woodward v. Afify*, No. 14-CV-856, 2018 WL 9875253, at *11 (W.D.N.Y. Sept. 28, 2018) ("[V]iewing the allegations here in the light most favorable to [the] plaintiff, the [c]ourt concludes that a single punch is an insufficient adverse action to meet even the lower standard required in a First Amendment retaliation claim."), *report and recommendation adopted*, 2019 WL 5394217 (W.D.N.Y. Oct. 22, 2019).  Accordingly, Plaintiff has failed to allege an adverse action taken by Mabra.

Because Plaintiff has failed to allege adequately the "adverse action" prong of his retaliation claim against Mabra, the Court dismisses the Mabra Retaliation Claim.

### 3.  The Excessive Force Claim

To the extent Plaintiff alleges a distinct excessive force claim against Mabra based on his act of shoving Plaintiff into his cell wall, (*see* Compl. 9), this claim fails for reasons already discussed: Just as the act of shoving an inmate fails to satisfy the relaxed standard necessary to allege an "adverse action," it necessarily fails to satisfy the more demanding standard necessary to establish an Eighth Amendment excessive force claim.

The Eighth Amendment's guarantee of freedom from "cruel and unusual punishment" encompasses "restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "[An] [a]nalysis of

20

cruel and unusual punishment claims requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for the conduct." *Manley v. Grossman*, No. 13-CV-1974, 2017 WL 4326541, at *8 (S.D.N.Y. Sept. 27, 2017).  The objective element focuses on the harm done "in light of contemporary standards of decency," *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quotation marks omitted), and asks whether "the deprivation alleged is 'sufficiently serious,' or 'harmful enough,' to reach constitutional dimensions," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citation omitted).  The subjective element requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by wantonness" in light of the particular circumstances surrounding the challenged conduct."  *Wright*, 554 F.3d at 268 (citation omitted).

Here, even assuming Plaintiff could satisfy the subjective element of his excessive force claim, the Court finds no basis to conclude that the alleged use of force was "objectively 'harmful enough' or 'sufficiently serious'" to violate the Eighth Amendment.  *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (citation omitted).  Courts in the Second Circuit have found that comparable uses of force—where a corrections officer forcefully shoves or pushes an inmate—are insufficient to satisfy the objective prong of an excessive force claim.  *See, e.g.*, *Tavares v. City of New York*, No. 08-CV-3782, 2011 WL 5877550, at *5–6 (S.D.N.Y. Oct. 17, 2011) (holding that a pat frisk where the plaintiff was "forcefully 'compressed' against the wall" was not a violation of the Eighth Amendment and noting that "[c]ourts in this Circuit have routinely found such types of minimal injuries and pain insufficiently serious or harmful to

satisfy the objective element of the Eighth Amendment analysis" (citing cases)), *report and recommendation adopted*, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011); *James v. Phillips*, No. 05-CV-1539, 2008 WL 1700125, at *5 (S.D.N.Y. Apr. 9, 2008) (concluding that a guard's "shov[ing] of an inmate" constituted a de minimis use of force that could not give rise to a viable excessive force claim); *Show v. Patterson*, 955 F. Supp. 182, 192–93 (S.D.N.Y. 1997) (concluding that the alleged force—"pushing [the plaintiff] against the wall"—was "de minimis and thus not protected by the Eighth Amendment"); *Bryan v. Admin. of F.C.I. Otisville*, 897 F. Supp. 134, 137 (S.D.N.Y. 1995) ("The Second Circuit has deemed brief confrontations between prisoners and guards such as the pushing incident alleged here insignificant for Eighth Amendment purposes."). Accordingly, the Court dismisses the Excessive Force Claim.

### 4. The Failure to Intervene Claim

Construed liberally, the Complaint raises a claim for failure to intervene against Kitt. (Compl. 7, 9.)

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. N.Y. C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). Moreover, "[l]aw enforcement officials, including prison officials, can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *McRae v. Gentile*, No. 14-CV-783, 2015 WL 7292875, at *2 (N.D.N.Y. Oct. 20, 2015), *report and recommendation adopted*, 2015 WL 7300540 (N.D.N.Y. Nov. 18, 2015); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (collecting cases)), *reh'g*

*denied*, 27 F.3d 29 (2d Cir. 1994).  Specifically, "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that excessive force is being used," provided there was "a realistic opportunity to intervene to prevent the harm from occurring."  *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at *8 (S.D.N.Y. Dec. 5, 2011) (alteration and quotation marks omitted).

"However, 'there can be no failure to intervene claim without a primary constitutional violation.'"  *Sanabria v. Tezlof*, No. 11-CV-6578, 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (quoting *Forney v. Forney*, 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015)); *see also Posner v. City of New York*, No. 11-CV-4859, 2014 WL 185880, at *8 (S.D.N.Y. Jan. 16, 2014) (explaining that "[b]ecause [the] [d]efendants [were] entitled to summary judgment on [the] [p]laintiff's primary claims that they violated her constitutional rights, it follow[ed] that they [were] entitled to summary judgment on her failure-to-intervene . . . claim[] as well"); *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012) (observing that a "failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim").  Because Plaintiff failed to state an excessive force claim against Mabra, it necessarily follows that the Failure to Intervene Claim against Kitt—which is premised on Kitt allegedly turning a blind eye while Mabra entered Plaintiff's cell—must also fail.  *See, e.g.*, *Forney*, 96 F. Supp. 3d at 13 (explaining that because "all of [the] [p]laintiff's primary [§] 1983 claims ha[d] been dismissed, [the] [d]efendants' motion to dismiss [the] [p]laintiff's failure to intervene claim" also had to be granted).  Accordingly, the Court dismisses the Failure to Intervene Claim.

### 5.  The Procedural Due Process Claims

Plaintiff alleges that after Vanlierop issued a false misbehavior report in retaliation for the Second Grievance, "a disciplinary hearing was conducted by Defendant Roberts, during which

[P]laintiff's repeat[ed] request[s] . . . to present audio and video evidence, as well as to call witnesses[,]" were "denied." (Compl. 10.) Plaintiff also alleges that Roberts' "handling of the disciplinary hearing was improperly influenced by the warden's office," which had apparently notified Roberts that it was displeased with Plaintiff's "treatment of Defendant Vanlierop." (*Id.* at 10–11.) At the end of the hearing, the punishment imposed by Roberts was "several days of cell confinement and loss of good time." (*Id.* at 10.)

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation and alteration omitted), *cert. denied sub nom.*, *McBride v. Ortiz*, 543 U.S. 1187 (2005). The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment).

With respect to the first requirement, "[p]rison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). When evaluating whether an inmate has suffered "atypical and significant hardship," courts must compare the conditions imposed upon that inmate with the conditions "endured by prisoners in [the] general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999). When evaluating the severity of an inmate's hardship, courts should consider both the duration and the conditions of confinement. *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009).

Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). "Prison disciplinary proceedings," however, "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (quoting *Wolff*, 418 U.S. at 556). Ultimately, a guilty finding in an inmate disciplinary hearing only needs to be supported by "some evidence from which the conclusion . . . could be deduced." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (quotation marks omitted). The Second Circuit has explained that "[j]udicial review of this 'some evidence' standard is narrowly focused." *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004). Such review "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (quoting *Hill*, 472 U.S. at 455–56). Finally, "the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman*, 2011 WL 6028212, at *7 (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)) (italics omitted).

### a.  The Roberts Procedural Due Process Claim

As noted, Plaintiff alleges that he was sentenced to "several days of cell confinement," along with "loss of good time." (Compl. 10.) Based on the latter allegation—but not the former—Plaintiff has adequately alleged a "liberty interest sufficient to trigger due process

protections during his administrative hearing." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009).  However, his vague allegation that Roberts "denied" his "repeat[ed] request[s]" to "present audio and video evidence, as well as to call witnesses," (Compl. 10), is insufficient to allege a procedural violation by Roberts.

The Second Circuit has explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s 'atypical and significant hardship' test." *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003).  It is not, however, the only relevant factor.  "The conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of 'atypical and severe hardship.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quotation marks omitted).  Accordingly, courts must consider both the conditions of disciplinary confinement and their duration, as "especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).

Although the Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," it has nevertheless established certain "guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed." *Palmer*, 364 F.3d at 64.  For example, the Second Circuit has explained that where a plaintiff is confined in SHU for an "intermediate duration" of between 101 and 305 days, "development of a detailed record" regarding the conditions of confinement as compared to "ordinary prison conditions" is required.  *Id.* at 64–65 (quotation marks omitted).  Moreover, "although shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest, [the Second Circuit has] explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the

conditions were more severe than the normal SHU conditions . . . or a more fully developed

record showed that even relatively brief confinements under normal SHU conditions were, in

fact, atypical." *Id.* at 65 (citation omitted). "In the absence of a detailed factual record," the

Second Circuit has "affirmed dismissal of due process claims only in cases where the period of

time spent in SHU was exceedingly short—less than . . . 30 days . . . spent in SHU—and there

was no indication that the plaintiff endured unusual SHU conditions." *Id.* at 66 (collecting

cases); *see also, e.g.*, *Colon v. Annucci*, 344 F. Supp. 3d 612, 633–34 (S.D.N.Y. 2018) (holding

that the plaintiff's "30-day keeplock confinement alone [was] insufficient to create a liberty

interest triggering due process protections" (collecting cases)); *Walker v. Quiros*, No. 11-CV-82,

2014 WL 7404550, at *8 (D. Conn. Sept. 30, 2014) ("In the absence of a more detailed factual

record, a term of segregated confinement shorter than [30] days generally does not create a

constitutional liberty interest."); *Houston v. Cotter*, 7 F. Supp. 3d 283, 298 (E.D.N.Y. 2014)

("Absent a detailed factual record, courts typically affirm dismissals of due process claims where

the period of time spent in SHU was short—e.g., [30] days—and there was no indication of

unusual conditions." (italics omitted)).

　　Here, Plaintiff alleges merely that he was sentenced to "several days of cell

confinement," along with "loss of good time." (Compl. 10.)[8] Plaintiff offers no allegations

regarding the severity or atypicality of the conditions he experienced in disciplinary

confinement. Without such allegations, "several days" in disciplinary confinement is insufficient

---

[8] Plaintiff has attached to his Complaint a document labeled "Disciplinary Hearing Officers Report." (*See* Compl. 18.) Under a section labeled "Confinement Sanctions Imposed," the document indicates that Plaintiff was sentenced to keeplock confinement, (*see id.*), which is "a type of residential segregation," *Brown v. Markham*, No. 16-CV-710, 2018 WL 1918625, at *1 (S.D.N.Y. Apr. 20, 2018). Although the number of days to which he was sentenced appears to be 22, because the writing is almost illegibly faint, the Court cannot determine with certainty how long Plaintiff was confined in keeplock.

to trigger a liberty interest in his disciplinary hearing.  *See Washington v. Fitzpatrick*, No. 20-CV-911, 2021 WL 966085, at \*9 (S.D.N.Y. Mar. 15, 2021) (holding that the plaintiff's allegation that he was sentenced to 30 days in keeplock confinement, during which he was denied various privileges such as phone calls, television, and commissary access, did "not plausibly plead a liberty interest"); *Ruggiero v. Way*, No. 19-CV-3631, 2020 WL 5126112, at \*9 (S.D.N.Y. Aug. 31, 2020) (holding that where the plaintiff alleged he was confined to SHU for 30 days, without "any allegation that he endured unusual SHU conditions during his confinement," the plaintiff "ha[d] not pleaded deprivation of a cognizable interest in liberty"); *Brown v. Murphy*, No. 16-CV-710, 2019 WL 2325777, at \*2–3 (S.D.N.Y. May 30, 2019) (holding that the plaintiff's 30-day period in keeplock confinement did not constitute an atypical and significant hardship where the complaint was "devoid of any allegations of the conditions of his keeplock confinement"); *Colon*, 344 F. Supp. 3d at 633–34 (dismissing due process claim where the plaintiff alleged that he was sentenced to 30 days in keeplock confinement and failed to "allege any facts suggesting that he was exposed to any conditions of confinement more harsh than typical keeplock"). Accordingly, Plaintiff has failed to allege a liberty interest based on his time in disciplinary confinement.

Plaintiff also alleges, however, that he suffered a "loss of good time," (Compl. 10), and the Disciplinary Hearing Officers Report attached to his Complaint indicates that he did lose a certain number of days of his good-time behavior allowance, (*see id.* at 18).  It is well-established that "the loss of good time credit can implicate a liberty interest."  *Jenkins v. Cordero*, No. 17-CV-1592, 2018 WL 456311, at \*4 (S.D.N.Y. Jan. 17, 2018) (citing *Wolff*, 418 U.S. at 556–57); *see also, e.g.*, *Gulley v. Roach*, No. 02-CV-908, 2004 WL 2331922, at \*5 (W.D.N.Y. Oct. 15, 2004) ("Loss of good time credits implicates a prisoner's liberty interest.").

28

Thus, Plaintiff's allegation that he lost good time credits, which is corroborated by the document attached to his Complaint, is sufficient to establish a liberty interest in his disciplinary proceedings.  *See, e.g.*, *Rivers v. Paige*, No. 12-CV-6593, 2014 WL 897094, at *3 (W.D.N.Y. Mar. 6, 2014) (holding that the plaintiff adequately alleged a liberty interest in his disciplinary hearing based on allegation that he had "lost 30 days of good time credit").

But while Plaintiff has adequately alleged a liberty interest in his disciplinary hearing, his allegations regarding procedural deficiencies are too vague and conclusory to establish a procedural due process claim.  As noted, Plaintiff alleges merely that Roberts "denied" his "repeat[ed] request[s]" to "present audio and video evidence, as well as to call witnesses." (Compl. 10.)  Courts have held that such vague, conclusory allegations are insufficient to establish the second prong of a procedural due process claim.  *See McFadden v. Annucci*, No. 18-CV-6684, 2021 WL 463829, at *9 (S.D.N.Y. Feb. 9, 2021) ("Simply alleging that he was denied the right to call witnesses, present documents or to 'confront accusations' is wholly conclusory and does not state a claim upon which relief can be granted."); *Banks v. Royce*, No. 18-CV-4738, 2020 WL 5038590, at *4 (S.D.N.Y. Aug. 26, 2020) (concluding that the plaintiff's allegation—that the defendants "denied [him] [his] procedural due process when they prevented [him] from presenting evidence in the form of witnesses and documents"—was "the type of 'unadorned, the-defendant-unlawfully-harmed-me' allegation" that is insufficient to state a claim (citations omitted)); *see also Rush v. Canfield*, 649 F. App'x 70, 71 (2d Cir. 2016) (summary order) (holding that the plaintiff's "assertion that he was 'denied the right to call witnesses'" was "a bare legal conclusion incapable of surviving a motion to dismiss" (citation omitted)).  Likewise, Plaintiff's allegation that Roberts was improperly swayed by the warden's office, (*see* Compl. 10–11), is merely a "[c]onclusory allegation[] of bias," which "[is] not enough to show that a

plaintiff received constitutionally insufficient process," *Banks*, 2020 WL 5038590, at *4

(collecting cases); *see also Fabricio v. Griffin*, No. 16-CV-8731, 2019 WL 1059999, at *9

(S.D.N.Y. Mar. 6, 2019) (holding that the plaintiff's "conclusory allegation[]" that the hearing

officer was biased failed to state a procedural due process claim).

     Accordingly, the Court dismisses the Roberts Procedural Due Process Claim.

<u>  b.  The Spaulding/Middleton Procedural Due Process Claim  </u>

     As discussed, Plaintiff also alleges that the outcome of his "appeals to Defendants

Spaulding and Middleton's office [was] improper and unjust." (Compl. 11.) "It is well settled

that, in order to establish a defendant's individual liability in a suit brought under § 1983, a

plaintiff must show the defendant's personal involvement in the alleged constitutional

deprivation." *Falls v. Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *31 (S.D.N.Y. Mar. 26, 2021)

(quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)) (alteration omitted).

There has been a long-running split in the Second Circuit as to "whether an allegation that a

defendant affirmed a disciplinary proceeding is sufficient to establish" that defendant's personal

involvement in the underlying constitutional violation. *Samuels v. Fischer*, 168 F. Supp. 3d 625,

643 (S.D.N.Y. 2016) (surveying authority on both sides) (alterations and quotation marks

omitted). Relying on the Second Circuit's 2020 decision in *Tangreti v. Bachmann*, 983 F.3d 609

(2d Cir. 2020)—which eliminated special standards for supervisory liability and required that

alleged constitutional violations be "established against the supervisory official directly," *id.* at

618—at least two courts in this District have found that a defendant's "fail[ure] to correct

another officer's violation" at a prison disciplinary hearing "does not suffice" to establish that

defendant's personal involvement in the alleged constitutional violation, *Washington*, 2021 WL

966085, at *10 (alteration and citation omitted); *see also Smart v. Annucci*, No. 19-CV-7908,

2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) (dismissing due process claim based on the

hearing officer's "deni[al] [of the] [p]laintiff's administrative appeal" because, under *Tangreti*,

such an allegation "cannot support the inference" that the officer was personally involved in the

alleged constitutional violation).  Thus, even if Roberts had committed a constitutional violation

at Plaintiff's disciplinary hearing, it seems doubtful that Plaintiff could state a claim against

Spaulding and Middleton based on their affirmance of Roberts' determination.  But the Court

need not resolve the claim against Spaulding and Middleton on this basis.  Here, given "the

absence of any underlying constitutional violation" at Plaintiff's disciplinary hearing to begin

with, "Plaintiff cannot maintain a cause of action against Defendant[s] [Spaulding and

Middleton] based on" their affirmance of Roberts' determination.  *Hinton v. Prack*, No. 12-CV-

1844, 2014 WL 4627120, at *13 (N.D.N.Y. Sept. 11, 2014); *see also Barnes v. Annucci*, No. 15-

CV-777, 2019 WL 1387460, at *15 (N.D.N.Y. Mar. 12, 2019) (explaining that "because no

constitutional violation occurred" at the plaintiff's disciplinary hearing, "and there was no wrong

to remedy," the plaintiff could not state a due process claim against a defendant based on his

affirmance of the disciplinary determination), *report and recommendation adopted*, 201 WL

1385297 (N.D.N.Y. Mar. 27, 2019).

For these reasons, the Court also dismisses the Spaulding/Middleton Procedural Due

Process Claim.

### 6.  The *Monell* Claim

To the extent Plaintiff intends to assert a claim against the County pursuant to *Monell v.*

*Department of Social Services*, 436 U.S. 658 (1978), his claim fails.  "Congress did not intend

municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy

of some nature caused a constitutional tort."  *Id.* at 691.  Thus, "to prevail on a claim against a

municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S 469, 478 (1986) (italics omitted). Rather, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). Moreover, a plaintiff also must establish an "affirmative" causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

Here, the Complaint is utterly devoid of any allegations that would establish the fifth element of a *Monell* claim. (*See generally* Compl.) Plaintiff does not allege, for example, that the County officially endorsed a formal policy of retaliating against inmates who file grievances,

or of depriving them of procedural due process at disciplinary hearings. *Brandon*, 705 F. Supp. 2d at 276. Nor does he describe actions by "government officials responsible for establishing the policies that caused the particular deprivation in question," or a "practice so consistent and widespread" that it "constitutes a custom or usage of which a supervising policy-maker must have been aware." *Id.* at 276–77. Likewise, the Complaint says nothing with respect to the County's alleged failure "to provide adequate training or supervision to subordinates." *Id.* at 277. Because Plaintiff offers no allegations to establish the fifth element of a municipal liability claim, any such claim must be dismissed. *See Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *4 (S.D.N.Y. July 25, 2019) (dismissing *Monell* claim where the plaintiff failed to "allege the existence of any policy, any actions taken or decisions made by any . . . policymaking officials, any systemic failures to train or supervise, or any practices so widespread that they practically have the force of law" and failed to "provide any factual details regarding . . . other [purported] lawsuits and grievances" on similar issues (collecting cases)); *see also McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [municipal] policy—unspoken or otherwise—that violates the Federal Constitution").

## III.  Conclusion

For the reasons stated above, the Court dismisses the Grievance Claim, the Mabra Retaliation Claim, the Excessive Force Claim, the Failure to Intervene Claim, the Procedural Due Process Claims, and the *Monell* Claim. The Vanlierop Retaliation Claim survives.

Because this is the first adjudication of Plaintiff's claims on the merits, the dismissed claims are dismissed without prejudice.  Plaintiff may file an amended complaint within 30 days of the date of this Opinion & Order.  The amended complaint should contain appropriate changes to remedy the deficiencies identified in this Opinion & Order.  Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint, and therefore must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the instant Motion, (Dkt. No. 28), and mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated:   September 24, 2021
          White Plains, New York

_____

KENNETH M. KARAS
United States District Judge